UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TOWN OF GRAMERCY | CIVIL ACTION |
| VERSUS | NO. 07-2655 |
| BLUE WATER SHIPPING SERVICES, et al. | SECTION "N" (1) |

## ORDER AND REASONS

Before the Court is Defendants' **Motion for Summary Judgment (Rec. Doc. 13)**. Defendants argue that the contact between the M/V MERCURY K and the Town of Gramercy's water intake structure, which damaged the structure, was an Act of God not preventable through the exercise of reasonable caution. The motion is opposed by the Plaintiff, Town of Gramercy. After reviewing Complaint, the memoranda of the parties, and the applicable law, the Court is unable to grant summary judgment since there is a genuine material fact issue as to whether the ship's captain took reasonable precautions to avoid the accident.

### I. BACKGROUND

The M/V MERCURY K is an oceangoing vessel sailing under the Panamanian flag, owned by Southern Pacific Holding Corporation and managed by Executive Ship Management, both of which are defendants to the instant suit. On September 17, 2005, the M/V MERCURY K –guided by a river pilot– arrived at Grand View Anchorage, Louisiana, on the Mississippi River and dropped anchor. In the days preceding arrival, the captain of the M/V MERCURY K, Samir Kumar, had monitored the movements of Hurricane Rita, which had entered the Gulf of Mexico but was expected to track west of Louisiana. The vessel was at anchor awaiting a berth on September 22nd, when Rita shifted to the east just prior to coming ashore on the 23rd.

There is some question as to precisely what happened after Captain Kumar realized that

Rita had swung east. According to his affidavit and the Incident Report he filed with the Coast Guard on September 23, 2005, Captain Kumar "requested agents to arrange pilot to go out of Mississippi River" [*sic*] on September 22, the day he realized Rita had shifted course. *See* Mot. at Ex. B ("Incident Report"); *see also* Mot. at Ex. D (Kumar affidavit) (¶4, noting that Kumar requested a pilot on the 22nd). After being told that the pilot station was closing that day and that no pilot would be available, he prepared for stormy conditions by taking on maximum ballast and checking the anchor lines. *See* Mot. at Ex. B; Mot at Ex. D (¶¶ 5-6). However, in a "Statement of Facts" that appears to be a ship's log and is attached to Defendants' motion, the only entry for September 22, 2005, reads, "Vessel idle, waiting availability of load berth." *See* Mot. at Ex. C ("Statement of Fact"). The entry for the *next* day, September 23, 2005, notes that Captain Kumar requested a pilot at 10:30 a.m. to take the ship out of the River and was advised that the station was closing and that no pilot was available. *Id.* What is undisputed is that when Rita came ashore on the 23rd, winds on the River increased and swung the M/V MERCURY K around, fouling her anchors and causing her to strike the Town's water intake structure at 3:40 that afternoon.

The Town of Gramercy filed suit against Blue Water Shipping in the 23rd Judicial District Court for the Parish of St. James, State of Louisiana, on September 28, 2006. Blue Water Shipping was later terminated from the suit and the present movants were added as Defendants. The case was removed to this Court on February 7, 2007.

## II. ANALYSIS

**A. Summary Judgment Standard**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall

be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th

3

Cir. 1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

### B. "Act of God" Analysis

Under the general maritime law, it is well settled that when a drifting vessel causes damage to a stationary object, there is a presumption that the moving ship is at fault. *The LOUISIANA*, 70 U.S. (3 Wall) 164, 173 (1865). This presumption of negligence is based on the logical deduction that a drifting vessel was mishandled or improperly moored. *See James v.*

4

*River Parishes Co., Inc.*, 686 F.2d 1129, 1132-33 (5th Cir. 1982). The Fifth Circuit has noted:

> In admiralty, this presumption does more than merely require the ship to go forward and produce some evidence on the presumptive matter. The moving vessel must show that it was without fault or that the collision was occasioned by fault of the stationary object or was the result of inevitable accident.

*Bunge Corp. v. M/V FURNESS BRIDGE*, 558 F.2d 790, 795 (5th Cir. 1977) (quoting *Patterson Terminals, Inc. v. S/S JOHANNES FRANS*, 209 F. Supp. 705, 707 (E.D. Pa. 1962)). The presumption thus has the effect of shifting the burden onto the moving ship. *Delta Transload, Inc. v. M/V Navios Commander*, 818 F.2d 445, 449 (5th Cir.1987). Defendants must disprove their fault by a preponderance of the evidence. *James*, 686 F.2d at 1132. They can satisfy this burden by showing that the accident could not have been prevented by "human skill and precaution and a proper display of nautical skills." *Id.* Defendants "'must exhaust every reasonable possibility which the circumstances admit and show that in each they did all that reasonable care required.'" *Bunge Corp.*, 558 F.2d at 795 (quoting *Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.*, 377 F.2d 724, 726 (5th Cir. 1967)).

A defendant may defend on the grounds that the accident was an act of God. "[A]n act of God is defined as any accident, due directly and exclusively to natural causes without human intervention, which by no amount of foresight, pains, or care, reasonably to have been expected, could have been prevented." *Union Pacific R. Co. v. Heartland Barge Management, L.L.C.*, 2006 WL 2850064, at * 13 (S.D. Tex. October 3, 2006). Courts interpreting the act of God defense have considered a number of factors, including: (1) the severity of the natural occurrence causing the damage; (2) the reasonable predictability of this natural occurrence; (3) the lack of human agency in the damage to the property; and (4) the reasonableness of any precautions.

*Uniroyal, Inc. v. Hood*, 588 F.2d 454, 460 (5th Cir. 1979). The burden of proving an inevitable accident or an act of God rests heavily upon the vessel asserting such a defense. *Bunge Corp.*, 240 F.3d at 929.

The Court finds that Defendants have failed to carry this burden, since there is conflicting evidence as to precisely when Captain Kumar requested a pilot to move his ship out of the Mississippi. Based on the evidence provided, a reasonable jury could find that Captain Kumar radioed for assistance on September 23, 2005, despite being aware some time the day before that Rita had swung eastward. From that fact, a reasonable jury could infer that had he requested assistance a day earlier, the M/V MERCURY K could have been moved out of the River or into a safe anchorage and the damage to the water intake structure could have been avoided. While Hurricane Rita was undeniably an act of God, Defendants have failed to show as a matter of law that they took reasonable precautions to avoid foreseeable damage.

### III. CONCLUSION

Accordingly, **IT IS ORDERED** that the motion is **DENIED**. This ruling, however, is without prejudice as to the Court's consideration of a properly supported motion made pursuant to Rule 50 of the Federal Rules of Civil Procedure following the submission of evidence at trial**.**

New Orleans, Louisiana, this 20th day of January, 2009.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**